[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter was initiated by summons and complaint dated September 23, 1997 and returnable October 14, 1997 claiming a dissolution of marriage, counsel fees, a property settlement, restoration of birth name and such other relief, legal or equitable, as the Court deems proper.
A motion for temporary alimony and return of personal property as well as a motion requesting a restraining order accompanied the complaint.
On October 22, 1997 the Defendant appeared by counsel; with the appearance was a motion for return of personal property and exclusive possession.
On April 1, 1998 the Defendant filed an answer to the complaint and a cross complaint.
On July 21, 1998 the Plaintiff filed an amended complaint claiming as grounds for the petition intolerable cruelty instead of irretrievable breakdown.
On August 10, 1998 new counsel appeared for the Defendant.
The matter came on for hearing by the Court on November 13, 1998, at which time the Plaintiff and Defendant were present with their counsel and witnesses.
The Court having heard the parties makes the followingfindings of fact.
The Plaintiff and the Defendant were married on June 1, 1996 in Norwich.
The parties have resided in Connecticut for more than 12 CT Page 13653 months next preceding the date of the complaint.
There are no minor children issue of this marriage.
The State of Connecticut is not and has not contributed to the support of either parties.
The Plaintiff's maiden name was Panes.
The Defendant enjoys good health.
Defendant's education extended through completing high school.
The Defendant has been employed by Frito Lay for six years and nine months.
This is the Defendant's first marriage.
This is the Plaintiff's third marriage.
The parties lived together for one year and three months prior to the marriage.
After the marriage the parties lived together for nine months before separating.
The Plaintiff is an exotic dancer and has been for some time.
At the time of the marriage the Plaintiff agreed to give up exotic dancing but did not keep the agreement.
On occasion the Plaintiff would return home in an intoxicated state.
The Plaintiff caused the arrest of the Defendant on a charge of assault 3rd, to which charge the Defendant pled under the Alford Doctrine.
The Defendant incurred substantial debt as the result of gambling and attorney's fees.
When the Plaintiff vacated the condominium of the parties, she removed all the furnishings except the washer and dryer. CT Page 13654
The mortgage debt to People's Bank is $1,200.00 delinquent.
The Plaintiff presently resides in Florida; she was born in the Philippines.
Plaintiff's education extended through the fifth grade.
Plaintiff came to the United States in 1987.
In the Phillippines the Plaintiff worked as a waitress for her uncle.
Plaintiff has been divorced twice.
There was violence in her second marriage.
The Plaintiff has hearing loss in her right ear.
The Plaintiff has no Green Card concerning her presence here.
In May 1998 the Plaintiff was in an automobile accident and as a result thereof she has periodic headaches, her car was totaled.
The issue as to Plaintiff's claim of Defendant's use of drugs is unclear as are her claims of physical violence.
The Plaintiff was age 20 when she left the Philippines, on arriving in California she worked in a factory doing assembly work.
Plaintiff is presently involved with the INS as to certain paperwork.
Plaintiff states she is still a citizen of the Philippines.
Plaintiff's last position before being an exotic dancer was with Mary Kay Cosmetics.
Plaintiff acknowledges having received expensive jewelry from the Defendant.
When the Plaintiff left the condominium of the parties, she went to reside with a male friend. CT Page 13655
Plaintiff admitted use of controlled substances in the past.
There were frequent arguments in the marriage.
In the past the Plaintiff has earned as much as $500.00 weekly as a dancer.
The Defendant's father loaned the Defendant $16,000.00 in order to make the required deposit on the condominium purchase.
The evidence is unclear on the Defendant's claim that the Plaintiff bit him, leaving black and blue marks.
The Plaintiff would absent herself from the home for periods of two or three days.
The Defendant gave the Plaintiff a $5,000.00 diamond, a sapphire bracelet, diamond earrings, a watch and other miscellaneous jewelry.
On occasion when he gambled, the Plaintiff accompanied the Defendant.
The Defendant has been hospitalized with depression and outpatient at Backus Hospital.
The Defendant has been arrested a number of times on the Plaintiff's complaint.
The Plaintiff received $5,000.00 incident to her May 1998 auto accident settlement.
Plaintiff used $1,000.00 to pay for the washer and dryer in the condominium and gave the Defendant $4,000.00 to invest.
When the condominium was purchased the Defendant took title in his name alone and executed the mortgage to the bank.
After the mortgage was finalized, the Defendant gave the Plaintiff a one-half share in the equity by appropriate conveyance.
This procedure was followed due to the Plaintiff's status.
The Defendant bought and paid for all the furnishings in the CT Page 13656 condominium.
As to the jewelry purchases and furniture purchases see Defendant's Exhibits A and B.
The Plaintiff seeks no interest in the jointly owned condominium. See Defendant's Exhibit E.
The Defendant had savings and investments as of December 31, 1997 to the amount of $12,386.91. See Plaintiff's Exhibit 2.
The Defendant's present pension entitlement (July 98) would be $174.65 per month at age 65.
The Defendant is age 26.
The Plaintiff's present share would be $1,205.67. Present value of pension at 4.25% equals $3,546.00. 34% equals the $1,205.67 share. See Plaintiff's Exhibit 6.
Defendant paid an attorney a $10,000.00 retainer as concerns the assault charge and bail bondsmen at $1,000.00 per arrest.
The Plaintiff's financial affidavit reflects income of $250.00 weekly as a dancer, weekly expenses of $272.89, debt of $4,183.00 and as her only asset, her equity in the condominium valued at 1/2 of $20,000.00 plus $800.00 in the bank.
Plaintiff discloses no jewelry as an asset but acknowledges the gifts.
The Defendant's financial affidavit reflects weekly gross earnings at Frito Lay of $600.00 gross, $433.00 net, weekly expenses of $428.00.
Defendant's debts per his affidavit are a staggering $73,900.00 accomplished primarily due to ill considered use of credit cards to pay for gambling losses and counsel fees.
Defendant values his equity in the 213 West Town St., Unit H-42 as $9,000.00.
Defendant's Save Up Pepsico asset is now reduced to $4,280.00. CT Page 13657
 Discussion
This is a marriage where the parties only resided together for nine months as husband and wife.
The marriage was fraught with problems on both sides.
There are no children.
The Plaintiff has gone to Florida to reside.
The principal problems in the marriage involve the Plaintiff's line of work and the Defendant's improvident resort to gambling.
Neither party is solely at fault.
 The Law
The Court has considered all of the statutes which apply in matters of this nature, 46b-56 et seq.
The Court has considered all of the applicable case law that govern to matter.
The Court has considered the testimony of the parties and all exhibits and the arguments of counsel.
The Court enters the following orders.
The Plaintiff shall quitclaim all of her right, title and interest in and to the condominium located at 213 West Town Street, Unit 42, Norwich to the Defendant.
The Defendant shall hold the Plaintiff harmless as concerns the mortgage on said condominium even though she was not a signatory on the mortgage note and deed.
Each party shall be responsible for the debts shown on their respective financial affidavits and hold the other harmless thereon.
The Defendant shall pay the Plaintiff as periodic alimony $100.00 a week for one year. The amount and the term are non-modifiable. CT Page 13658
The amount shall be taxable to the Plaintiff and deductible by the Defendant.
The amount shall terminate on the Plaintiff's death, remarriage or cohabitation with an unrelated male.
The Plaintiff may retain her jewelry.
The Plaintiff having removed all of the furnishings from the condominium and the jurisdiction may retain the same.
The Defendant shall pay the sum of $750.00 to the Plaintiff toward her counsel fees within 90 days.
The Defendant shall cooperate with the Plaintiff in her securing medical benefits incident to his employment for the period allowed by Cobra but at her sole cost and expense.
Plaintiff may retain her Liberty Bank savings account.
The Defendant may retain his pension in Save Up with Pepsico now valued at $520.00 due to the loan against it.
The parties disclose no ownership of motor vehicles.
The Plaintiff's birth name of Norrita E. Panes is restored to her.
The marriage is dissolved on the grounds of irretrievable breakdown and the parties are declared to be single and unmarried (C.G.S. § 46b-40c).
Austin, JTR